EMMA M. SWOBODA, Appellee, v. THE HOMESTEADERS, Appellant.

INSURANCE: Prohibited Occupation. An insurer which, knowing that an applicant for insurance is engaged in a prohibited occupation, issues its policy, without fraud by the insured or his beneficiary, by classifying the insured as engaged in a permissible occupation, may not, in case the insured *continues without change* in the same prohibited occupation, take protection under a policy provision which allows the insurer to scale or reduce the benefits, in case the insured "hereafter" enters upon a prohibited occupation.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

OCTOBER 26, 1920.

REHEARING DENIED FEBRUARY 16, 1921.

PLAINTIFF brought suit, as beneficiary under a certificate of membership in the defendant society, a fraternal beneficiary association, to recover the sum of $790, which she alleged to be due her by reason of the death of her husband. Defendant pleaded, as a complete defense, that deceased practiced a fraud upon it in his application, and that there was a breach of warranty, and, as a partial defense, that, in any event, under a provision of the policy, the recovery could be only one tenth of the amount claimed by plaintiff. Trial to a jury, and verdict and judgment for the plaintiff. Defendant appeals.—*Affirmed.*

*Jepson & Struble* and *Frank H. Dewey,* for appellant.

*Naglestad & Pizey,* for appellee.

PRESTON, J.—Plaintiff alleged that, on December 14, 1916, defendant issued to her husband a certificate of membership, and that he was a member of that association at the time of his death; that the certificate provided that, if death occurred within one year from date of admission, the sum of $790 would be paid to the beneficiary; and that Swoboda died April 13, 1917. . Plain-

tiff attached a copy of the certificate, which included a copy of the application upon which the certificate was issued. Defendant admitted that, about December 2, 1916, the said Swoboda made application for admission; and alleged that said application, among other things, contained questions, answers, and statements, asked of, answered by, and made by the applicant, and that such statements and answers were warranties; that he warranted the truth of his statement as to his occupation at the time of making the application, that he was neither "occasionally or continuously, during any part of the time, directly or indirectly, engaged or employed in any occupation prohibited by the by-laws;" that, in answer to a question as to his occupation, he stated that he was a "common laborer;" that he made no answer to the question as to the address of his employer, and answered another question as to whether he had, within one year, changed his occupation, stating that he had, and gave his former occupation, "ice man;" that defendant had by-laws which were referred to in the application and certificate, and which were made a part of the contract of membership, and that thereunder certain occupations were classified as hazardous, extrahazardous, and prohibited; that the rate of assessment was always the same, irrespective of the member's occupation; that the occupation of railroad switchman was prohibited at the time of the application and the issuance of the certificate; that, in fact, deceased was, at the time he made the application and at the time the certificate was issued and at all times thereafter until his death, a railroad switchman, and that he died, April 13, 1917, while engaged in such occupation, and as a direct result thereof; that a by-law provides that, in the event of the death of any member engaged in an occupation classified as prohibited, the society might settle said loss in full on percentage shown in another by-law, which provides that, under such circumstances, one tenth of the value of the certificate should be paid, if the death occurred within 12 months. The defendant therefore claimed that, if plaintiff was entitled to recover at all, such recovery, if any, would be based on the occupation and cause of death of the member, and as set out and defined in the certificate of membership and by-laws of the association, and that, said Swoboda having been a member of the society, if he

was a member at all, less than one year, and being engaged in a prohibited occupation at time of death, and meeting his death as a direct result of said occupation, the full measure of plaintiff's recovery would be one tenth of the amount that would have been due, had deceased met his death while in an ordinary occupation. The defendant further alleged that, if the agents of defendant inserted in the application a different answer from that given by the applicant, and without the knowledge or consent of the applicant, such act, if done by the agents, would operate only as a waiver as to membership in the defendant society; but that such member, after admission, would be bound by all the provisions of the contract of membership, as set out in the certificate and by-laws, and it denied plaintiff's claim that defendant's deputy and agent did not correctly record the answer of the applicant.

In reply, plaintiff alleged that the application was taken by one Secord, a resident soliciting agent, duly authorized by defendant to obtain new members and receive applications; that, at the time said application was made out, Secord was accompanied by a deputy or field agent of the supreme president of the association; that said deputy was present and assisted said agent in preparing the application; that deceased informed said agent or deputy that his occupation was that of a railroad switchman; that deceased was not asked to read the application after it was filled out, and did not read it before signing it; that deceased never knew, and plaintiff did not know until his death, that the agent had not correctly written into said application the answers given by deceased; that he paid the fees asked at the time of the making of said application, and thereafter received the certificate of membership sued on; that deceased did not participate in the fraud of the agent. Notwithstanding the manner in which the application was made out, and the dispute in reference thereto, defendant concedes that deceased was a member of the association, and admits that he had paid all premiums up to the time of his death, and, as said, claims that, even though it be found that the agents incorrectly recorded the answers in the application, this could amount only to a waiver as to his membership.

1. We shall spend but little time on the question as to

whether deceased gave correct answers, and whether they were incorrectly taken down by the agents. Plaintiff's testimony tends to show, as contended by her, that he did give correct answers, and that, therefore, defendant and his agents knew that his occupation was that of a switchman, and that the agents did not correctly record the answers actually given as to his occupation; that this fact was unknown to the deceased or to the plaintiff; and further, that there was no collusion between deceased and the agents, and that deceased did not participate in the alleged fraud. The witnesses for the defendant contradict this. We understand appellant.to concede that there is a dispute at this point. There is a conflict in the evidence. The jury has determined the dispute in favor of plaintiff. This being so, there is nothing for our determination, and we shall not set out the evidence.

2. The more important question, and really the vital point in the case, as we view it, is whether plaintiff is entitled to the full amount of the certificate, or only one tenth, as contended by defendant. The position of appellee is that plaintiff became a member of the association as a common laborer, and under that classification, and that, since there was no change in his occupation after the application was made and after he became a member, up to the time of his death, or, in the language of the by-laws, he did not "hereafter * * * engage in any of the occupations classified as prohibited," the defendant was not entitled to settle the loss in full on a percentage of one tenth, as contended by the defendant. Other provisions of the by-laws not heretofore set out should be referred to. One provides:

"Section 93. Entering Prohibited Territory and Conditions, Occupations, or Classes. If any holder of a benefit certificate in this society shall hereafter * * * engage in any of the occupations, * * * classified as prohibited in these laws, the entering upon such occupation * * * shall totally exempt this association from any and all liability to such member or his beneficiaries on account of such disability or death, except as provided in the event of death by suicide," etc.

"Section 94. Suicide Classification. In event of death of a member * * * while engaged in an occupation classed as

prohibited, * * * this society may settle said loss in full on percentage, as shown in Division 7, Paragraph D.''

This Division 7 has been before set out.

''Section 95. The rate of assessment under all classifications shall be the same but in valuing the certificate for the purpose of determining the amount of benefits due thereunder, the cause of death or injury and the place of residence shall determine the classification under which the benefits shall be paid as well as the classification fixed by the medical director at time of entry.''

It is contended by appellant that, conceding that deceased was not a party to any fraud on the society by its agents, and that there was a waiver, still deceased obtained only a membership in the society, and that his membership was limited and defined by his contract; and further, that, this being so, the amount of his recovery was determined by his occupation at the time of death, and upon the classification of risk at that time, and not on the classification at the time of entry; therefore, since, at the time of death, he was engaged in a prohibited occupation, his beneficiary was entitled only to one tenth. It is argued for appellant that, under the laws of defendant society, a member might have been accepted under an occupation classified as extrahazardous, and afterwards pass into an occupation classified as ordinary, and the benefit due would be such as the occupation at the time of death warranted. This may be so in some cases. In the instant case, deceased was not accepted under an occupation classified as extrahazardous. His actual occupation of switchman was entirely prohibited. He was, however, admitted as a laborer. There are cases holding that, where there has, in fact, been a change in occupation after the insured becomes a member, the classification at the time of death would apply; but that is not this case. The instant case does not involve the rights of a beneficiary where the holder of a certificate had changed his occupation to one prohibited. Either the certificate was void, and the holder never became a member, or, by reason of waiver and estoppel on the part of defendant, he became a member entitled to be classed as engaged in an ordinary occupation. If the amount of the policy may be reduced, it must be because of the provisions of Sections 93, 94,

and 95, before set out. The contract must be construed as a whole, considering the application, by-laws, and certificate together. In this case, there was no change in occupation. True, deceased would not have been entitled to membership at all as a switchman, and therefore would not be entitled to be in any classification. It was through no fault of the deceased; as the jury has found that he was admitted to membership, and that he was classified as a common laborer. He was admitted as a member, and classified as a common laborer. Nothing thereafter was done by him to change his status or classification that would affect his rights as a member, and under the classification as a common laborer. We think it is only when one who is the lawful holder of a certificate changes his occupation to one prohibited that the value of the certificate continues for the smaller amount. We think the estoppel and waiver are broader than contended by appellant.

The court submitted to the jury for determination the question as to whether there was fraud in the application. Of course, if the jury had found there was fraud, the plaintiff would not be entitled to anything. The trial court, construing the contract as we do, did not submit the question as to the defendant's claim in regard to the reduced amount, but instructed that, if there was no fraud by deceased, and plaintiff was entitled to recover, the amount would be the full face of the policy, or $790. Appellant complains of the failure of the court to instruct in regard to the lower amount, and of the court's refusal to give an instruction offered by the defendant on that subject. As we have indicated, we think the trial court was right in this.

Some other minor matters are complained of, but they are not controlling. The judgment is—*Affirmed.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.